PerLee vs. Onderdonk and others.

O., the last indorsee of a promissory note, obtained a judgment against the makers
and indorsers. An execution was issued, and after the same had been levied upon
personal property of the makers, sufficient to satisfy the judgment, (or if the levy
was insufficient it was the fault of the sheriff, and he had become responsible for
the debt,) P. the third indorser, paid the judgment, with the understanding and
upon the agreement that it should not be canceled, but that it should be assign-
ed to him, and enforced against the makers and prior indorsers, for his benefit.
In an action by P., against the other parties to the note, praying that O. might
be decreed to assign the judgment to him, and that P. might have leave to
issue executions thereon against the property of the makers and prior indors-
ers, the same as though no execution had been issued; *it was held* that P.,
having by his interference, released the lien under the levy, or the responsi-
bility of the sheriff, either of which would, if enforced, have relieved the
prior indorsers, it would be inequitable to make those indorsers, or their prop-
erty, liable to him for the debt. The relief asked for, was accordingly denied.

MOTION by the plaintiff for a new trial, upon exceptions
taken at the trial. The complaint alleged the following
facts. On the ninth day of September, 1851, a judgment was
entered in the supreme court, in favor of the defendant Levi
Onderdonk, against the defendants William Hunt, Samuel Car-
penter, Joseph D. Hunt, Daniel Carpenter, Henry PerLee and
William Dodge, for $2050.42. The judgment was obtained on
a note executed by said William Hunt and Samuel Carpenter,
as makers, and the other persons as indorsers, they indorsing
the same in the order of their names as above. Said note was
for the benefit of said William Hunt and Samuel Carpenter.
On the 14th of September, 1851, an execution was issued on
said judgment, against the defendants in said judgment, and on
the 15th day of November, 1851, the amount of the judgment
was paid by Henry PerLee, with the understanding and agree-
ment that said judgment should not be canceled, but that the
same should be held for and assigned for the benefit of said
Henry PerLee against the makers and prior indorsers. That
on or about the 17th day of March, 1852, Henry PerLee called
by his agent, upon Levi Onderdonk to assign said judgment for
the benefit of said Henry PerLee, the latter offering to pay the
expense of said assignment, and Onderdonk refused. That the

PerLee v. Onderdonk.

defendants William Hunt and Samuel Carpenter, became insolvent in the fall of 1851, and also the said Joseph D. Hunt and Daniel Carpenter, and that Daniel Carpenter, in the month of September or October, 1851, by a voluntary assignment transferred all his property to the defendants Abraham Bockee and Robert Hoag, for the benefit of his creditors; and that said assignment embraced lands upon which said judgment was a lien. That said judgment has not been canceled or the execution returned; that Henry PerLee, by an assignment made for the benefit of his creditors, on the 24th day of August, 1852, assigned to the plaintiff all his right in said judgment. The plaintiff prayed judgment that Onderdonk might assign said judgment to him, and that the plaintiff might issue execution or executions on said judgment, against the personal property of the defendants William Hunt, Samuel Carpenter, Joseph D. Hunt and Daniel Carpenter, and also against the real estate owned and possessed by them or either of them, at the time of the docketing of said judgment, the same as though no execution had been issued on the judgment. The defendants, Samuel Carpenter, Joseph D. Hunt, Daniel Carpenter, Abraham Bockee and Robert Hoag by their answer denied any agreement that said judgment should be held for the benefit of Henry PerLee; they also claimed that a levy was made upon sufficient property of William Hunt and Samuel Carpenter, to pay the judgment, before payment by Henry PerLee. They admitted that Daniel Carpenter assigned his property on the 14th of November, 1851, and charged that the assignees had sold the real estate which Daniel Carpenter assigned; and they denied the plaintiff's right to the judgment claimed by him. The defendant Levi Onderdonk answered and denied that the said judgment was held to be for the benefit of Henry PerLee, but admitted that the judgment had been paid, and that the agent of Henry PerLee had demanded an assignment, and alleged that the defendant Abraham Bockee had requested him not to assign said judgment, and denied the right of the plaintiff to have the judgment he asked for in his complaint. On the trial, judgment was rendered for the defendants, with costs, the court deciding

that the plaintiff's equitable right to be subrogated was lost, by his failure to assert it until after the failure of Hunt & Co.

*W. Newton,* for the plaintiff. I. A surety, or a party who stands in the situation of a surety, is entitled to be subrogated to all the rights and remedies of the creditors whose debt he is compelled to pay, as to any fund, lien or equity which the creditor had against any other person or property, on account of such debt. (*Mathews* v. *Aiken,* 1 *Com.* 599.) And this right does not depend upon contract, but rests upon principles of justice and equity. It is scarcely possible to put this right of substitution too high. (*Hodgson* v. *Shaw,* 3 *Myl. & K.* 183.)

II. Any of the indorsers to a note may pay the holder, and take an assignment of the judgment against the parties to the note or bill, antecedent to himself, and thus reimburse himself. (*Corey* v. *White,* 3 *Barb. S. C. R.* 12.)

III. Mere indulgence to the principal debtor at the will of the creditor, however long continued, and whatever may be the consequences, will not operate to discharge a surety. (*Schroeppell* v. *Shaw,* 3 *Com.* 446. *Varnum* v. *Bellamy,* 4 *McLean,* 87. *Morrison* v. *Hartman,* 14 *Penn. State R.* 55. *Thornton* v. *Dabney,* 23 *Miss.* 559. *Hawkins* v. *Ridenhour,* 13 *id.* 125. *Gardner* v. *Watson,* 13 *Ill.* 347.)

IV. In New York, equity recognizes and protects the relation and rights of a surety, after as well as before a judgment. and the same rule extends to courts of law. (*LaFarge* v. *Herter,* 11 *Barb.* 159.)

V. The facts sworn to by Sheriff Morey did not constitute a levy upon Hunt & Co's property. He did not do enough to make him a trespasser if the process were not a justification; and veiwing the property by the officer and his mentally intending to levy and afterwards making a memorandum did not amount to a levy. (*Camp* v. *Chamberlain,* 5 *Denio,* 198. *Price* v. *Shipps,* 16 *Barb.* 585.)

VI. A surety paying the debt of his principal, or a person compelled to pay such debt for the protection of his own rights, is, as a matter of course, and without engagement to that effect,

substituted in the place of the creditor by a court of equity. (*Sandford* v. *McLean*, 3 *Paige*, 117. *Bangs* v. *Strong*, 4 *Comst.* 315. *Waddington* v. *Vreedenburgh*, 2 *John. Ca.* 227. *Clason* v. *Morris*, 10 *John.* 524. *Vail* v. *Foster*, 4 *Comst.* 212.) Sureties who pay a judgment debt of the principal, though it be thereby extinguished, are entitled to the benefit of it in equity, except as against bona fide purchasers or mortgagees. (*Eddy* v. *Traver*, 6 *Paige*, 521. *See also Wilkes* v. *Harper*, 2 *Barb. Ch. Rep.* 338. *Mathews* v. *Aikin*, 1 *Comst.* 595.) An arrangement between a creditor and the debtor, whereby time is given to the latter, cannot prejudice the sureties, no evidence being produced showing a knowledge of, or acquiescence on the part of the sureties in, such arrangement. (*Everett* v. *The United States*, 15 *Alabama Rep.* 166.) So, where a bank made an arrangement with its debtor by giving time, and there was no evidence of the knowledge of the matter by the sureties, it was held to be erroneous for a court to charge that from the acts of the bank, a jury might infer a knowledge of the arrangement made with the debtor by the sureties. (*Everett* v. *The United States*, 15 *Alab. R.* 166.) A direction, by the creditor to suspend proceedings upon an execution against the principal debtor until further orders, no levy having been made, and there being no consideration for the delay, does not release the surety. (*Hetherington* v. *Bank of Mobile*, 14 *Alabama Rep. N. S.* 68. *Royston* v. *Howie*, 15 *id.* 306.)

*F. Tillou & W. Wilkinson*, for the defendants. I. The right of subrogation claimed by the appellant, if it ever existed, was lost, through delay to assert and enforce it; the suit for subrogation not having been brought until nearly one year after the failure of William Hunt and Samuel P. Carpenter, (Hunt & Co.) the principals. (1.) Equities are shifting in their nature. They are but *relative* rights and duties, changing with the lapse of time ; being created and modified or destroyed by the succession of events. (2.) The delay referred to, deprived the respondents, prior indorsers to Henry PerLee, (appellant's assignor,) of their remedy against the principals. (3.) The rights

and remedies of such prior indorsers, as to the principals, were the same in all respects as those of Henry PerLee, and he had no right to do or suffer any thing tending to divest or impair such their rights and remedies. (*Storms* v. *Thorn*, 3 *Barb. S. C.* 314. *Bangs* v. *Strong*, 4 *Comst.* 319.   *Story's Eq. Jur.* §§ 324, 325.)

II. Neither the appellant, nor Henry PerLee his assignor, ever had any right to be subrogated in place of Onderdonk, the judgment creditor, as against any of the respondents, prior indorsers to said Henry PerLee.   (1.) Subrogation is a right purely *equitable* in its nature, being foreign to *contract*, both in its essence and incidents.   (1 *Comst.* 595.   *Mathews et al.* v. *Aikin*, 2 *Barb. Ch. Rep.* 458.   5 *Barb.* 660.)   (2.) Hunt & Co. and William. Hunt, the principals, had abundant visible personal property to satisfy the Onderdonk execution twice over, at the time of the sheriff's levy, and for months thereafter; and Henry PerLee had personal knowledge of the fact during the whole time.   (3.) Henry PerLee knew that the sheriff held the property of Hunt & Co., the principals, under the Onderdonk execution, and that it was the duty of the sheriff to sell it in exoneration and discharge of him (PerLee) and his co-indorsers.   (4.) If Henry PerLee paid the execution in fact he acted as an officious volunteer and intermeddler; and for a most unconscientious purpose.   He was under no necessity to pay it.   No levy had been made on his property, and he knew, when he paid it, that the effect would be to sacrifice his brother indorsers.   He was never asked by any of the respondents to pay the execution.   (3 *John.* 433.   10 *Idem*, 361.   14 *id.* 87.   8 *Durnford & East*, 308.   (5.) If Henry PerLee paid the Onderdonk judgment and execution by request of William Hunt, or Hunt & Co. the principals, he might be subrogated as to them.   But any understanding either between PerLee and Wm. Hunt, or PerLee and the sheriff, could not prejudice the respondents, PerLee's co-indorsers; as any conclusive arrangement between Henry PerLee and Wm. Hunt or the sheriff, was in fraud of the equities of his brother indorsers, which Per Lee was bound to respect.

III. The levy made by the sheriff on the property of Hunt &

Co. was a payment of the Onderdonk judgment in law; at least so far as the appellant or his assignor is concerned. The levy was discharged by the act of Henry PerLee, whose assignee, the appellant, now seeks to revive and enforce the judgment and execution against the respondents, whom such levy would have protected but for PerLee's interference.

IV. The principle ruled in *Corey* v. *White*, (3 *Barb. S. C.* 12,) has no application to the case at bar; the facts of that case being totally dissimilar to those of this. The same is equally true of the case of *Schroeppel* v. *Shaw*, (3 *Comst.* 446;) that and the present case presenting a state of facts utterly unlike.

V. Finally, this being a *case*, and as such presenting *all the evidence*, if the decision appealed from be warranted by the proofs, this court will not reverse the judgment and grant a new trial, although the judge below may have given an *erroneous or inadequate reason* for his decision; as the only effect of granting a new trial would be to send the parties back to relitigate the matter with the like result. (1 *Wend.* 380. 2 *id.* 550. 24 *id.* 224. 1 *Hill*, 118.)

*By the Court,* S. B. STRONG, J. The learned judge no doubt gave a wrong reason for his judgment. Mere delay will not discharge the surety, nor impair the right of subrogation.

The great, and in my opinion, insuperable difficulty in the plaintiff's way is, that Henry PerLee by his interference discharged an ample security which Onderdonk had at the time for the payment of his judgment, and in enforcing which he might be deemed a trustee for the benefit of the indorsers on the note to him, according to their respective priorities. The controversy is between the representatives of Henry PerLee, an indorser, and Daniel Carpenter, a prior indorser of the note upon which Onderdonk, the last indorser, obtained his judgment. Daniel Carpenter was of course a surety to Henry PerLee for any amount which he might be compelled to pay on the note. Onderdonk's judgment and execution were against the makers and all the indorsers of the note. The execution had been levied upon the personal property of the makers, sufficient to satisfy the

amount of the judgment, and the sheriff to whom it was direct-ed could, at the time when Henry PerLee paid him the mon-ey, have sold such property to satisfy the execution. Or, if the levy was insufficient, it was the fault of the sheriff, who knew of the existence of the property in his county before the time limited in the execution had expired, and he had become respon-sible for the debt. These facts were known to Henry PerLee when he paid the amount of the judgment. He was at the time residing with one of the makers of the note. By paying the money Henry PerLee released the lien under the levy, or the responsibility of the sheriff, either of which would, if enforced, have relieved Daniel Carpenter. It would be inequitable to make him or his property responsible for the debt, under such circumstances.

No objection has been raised to the affirmative relief granted to the defendants.

The judgment should be affirmed.

[Kings General Term, January 2, 1855. *S. B. Strong, Rockwell* and *Dean,* Justices.]